IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JAMES R. HAUSMAN, individually and derivatively on behalf of THE GOLD CENTER, INC., an Illinois corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>TODD GREEN et al. )<br><br>Defendants. ) | Case No. 20-cv-3276 |

OPINION

COLLEEN R. LAWLESS, United States District Judge:

Before the Court is Plaintiff James R. Hausman's Motions *in Limine* Nos. 1 and 2. (Docs. 149, 150). Plaintiff seeks to bar Todd Green from testifying about the value of the disputed real property and to bar certain testimony from Defendants' expert witness.

I.    BACKGROUND

The remaining issue between the parties concerns the amount in damages to award Plaintiff for Defendant Todd Green's breach of his fiduciary duty owed to The Gold Center, Inc. ("GCI"). Green breached his fiduciary duty by (1) his usurpation of GCI's corporate opportunity to purchase certain real property located in Naples, Florida (the "Naples Property" or the "Property"), and (2) causing GCI to pay rent on a portion of its leased premises in the Naples Property that GCI was not obligated to pay. (Doc. 127). The Court will determine at trial the value of the Naples Property in order to establish the extent of GCI's injuries.

## II. DISCUSSION

### A. Motion *in Limine* No. 1: Value of Naples Property

Plaintiff seeks to bar testimony at trial from Defendant Todd Green about the value of the Naples Property. Green wishes to opine on its value as a witness based on his own knowledge and experience. In particular, Green, at a deposition in his individual capacity, testified "as to what made the Naples [Property] attractive to him," that "he is in the real estate business down in Florida," that it was "a good value," and he "looked at multiple properties and rent factors to determine the fair market value of the rent." (Doc. 155 at 2–3). As part of their memorandum of law opposing summary judgment, Defendants attached an affidavit of Green where he states, among other things, "that he has reason to question whether the market value of the Naples property has increased by over $2 million since 2018 and whether the Naples property was worth $7.75 million on May 26, 2023." (*Id.* at 3–4). Defendants later provided Plaintiff a supplemental disclosure indicating, in part, Green's knowledge of the value of the Naples property.

Plaintiff takes issue with Defendants' disclosures. Defendants' initial disclosure was purportedly incomplete. And their supplemental disclosure was provided on June 9, 2025 — roughly two months prior to trial[1] — adding to Defendants' answers to interrogatories dated February 16, 2022. At that time, "[n]either Defendant disclosed Green, or anyone else, as a person with knowledge about the value of the Naples Property." (Doc. 149 at 3). Defendants also failed to disclose Green as a expert prior to the

---

[1] Trial was later continued from July 28, 2025 to November 11, 2025 at the request of Defendants. (Text Order 7/11/2025).

September 8, 2023 deadline. (Text Order 8/21/2023; Doc. 149 at 4). Therefore, Plaintiff argues Green should be barred from testifying at trial as to the value of the Naples Property because Defendants unjustifiably violated their Rule 26 disclosure obligations, causing Plaintiff prejudice.

> Rule 26(a) of the Federal Rules of Civil Procedure provides in pertinent part:
>
> (1) *Initial Disclosure.*
>
> (A) In General. . . . [A] party must, without awaiting a discovery request, provide to the other parties:
>
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—*along with the subjects of that information*—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]
>
> * * *
>
> (2) *Disclosure of Expert Testimony.*
>
> (A) In General. *In addition to the disclosures required by Rule 26(a)(1)*, a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

Fed. R. Civ. P. 26(a) (emphasis added). Rule 26(e) additionally requires a party to supplement their disclosure or response "*in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has *not otherwise been made known* to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e) (emphasis added).

Should a party violate Rule 26(a) or (e), "the party is not allowed to use that information or witness" at trial, "unless the failure was substantially justified or

harmless." Fed. R. Civ. P. 37(c)(1). While "[a] district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the Seventh Circuit has provided four factors to guide a district court's discretion: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Plaintiff advances three ways Defendants' violated their duty to disclose: (1) Defendants violated 26(a)(1) by not disclosing that Green was likely to have discoverable information about the Naples Property; (2) Defendants violated 26(e) by not timely supplementing their initial disclosure concerning Green; and (3) Defendants violated 26(a)(2) by not disclosing Green as a witness with scientific, technical, or other specialized knowledge.

Rule 26(a)(1) requires a party to disclose individuals likely to have discoverable information and "the subjects of that information." Defendants disclosed Green as having "information relevant to all issues raised and facts alleged in the Plaintiff's Complaint." (Doc. 149-1 at 2). The disclosure of a witness under 26(a)(1) signals that the witness may be called in a party's case-in-chief at trial, thereby alerting to "the opposing party that deposing [the] witness[] may be necessary in order to learn the substance of their testimony, and to ensure that they do not hear the testimony for the first time at trial." *Doe v. City of Chicago*, No. 18-cv-3054, 2019 U.S. Dist. LEXIS 180495, at *27 (N.D. Ill. Oct.

18, 2019). "Indicating briefly the general topics on which such persons have information should not be burdensome, and [] assist[s] other parties in deciding which depositions will actually be needed." Fed. R. Civ. P. 26(a)(1)(A) Notes of Advisory Committee on 1993 Amendments.

Even assuming Defendants should have been more detailed, any 26(a)(1) violation was cured at Green's deposition or later. The disclosure was all-encompassing: Green purportedly had knowledge of every material fact and issue in the Complaint. While so broad that it may have been insufficient, Plaintiff was yet alerted by the disclosure that a deposition of Green was necessary to learn the substance of his information. As already described above, Plaintiff deposed Green on topics concerning the value of the Naples Property and rent, including Green's experience in Florida real estate and his reasoning for purchasing the Property. Plaintiff certainly could have "fleshed out the details of Green's knowledge" (Doc. 149 at 9), as Plaintiff was evidently on the right track with his questions. Defendants, moreover, submitted an Affidavit from Green two years ago explaining his knowledge of the Property's value.[2] Plaintiff cannot now claim to be surprised or prejudiced by any insufficient 26(a)(1) disclosure.

---

[2] The August 25, 2023 Green Affidavit stated in part, "Through various entities in which I have an ownership interest, I own numerous pieces of real estate in Naples, Florida and have substantial experience doing business in the Naples, Florida area. As a result of my experience[,] I have knowledge as to the valuation of property in the Naples, Florida area" including the Naples Property at issue. (Doc. 108-1 at ¶¶ 3–6).

Plaintiff contends that by supplementing their disclosure roughly two years later,[3] Defendants imply that their initial disclosure was incomplete or Green's knowledge about the Property had not otherwise been previously disclosed. Rule 26(e) provides that a party must supplement their incomplete or incorrect disclosure in a timely manner if the supplemental information has not already been made known to the other party during discovery. Here it's clear that the disclosure was untimely. *See Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus.*, No. 95 C 0673, 1996 U.S. Dist. LEXIS 17362, at *25 (N.D. Ill. Nov. 20, 1996) ("If a party is allowed to withhold the supplementation of its discovery responses until after fact discovery is closed, the purpose of [Rule 26(e)] is effectively frustrated because the opposing party is denied the opportunity to conduct discovery on the supplemented responses."). Green's bases of knowledge concerning the value of the Naples Property had already been made known to Plaintiff as illustrated above.

As for Plaintiff's final argument, Rule 26(a)(2) requires a party to disclose "the identity of any witness it may use at trial to present [expert testimony] under Federal Rule of Evidence 702, 703, or 705." Where a party intends to use an individual as a fact witness under 26(a)(1) and "is also expected to give expert testimony based on scientific, technical, or other specialized knowledge within the scope of Rule 702, a *second* disclosure is required" under (a)(2). *Davis v. Hughes*, No. 16-CV-600, 2025 U.S. Dist. LEXIS 189216,

---

[3] On June 9, 2025, Defendants disclosed, "Mr. Green has knowledge of the value of the Naples building, how much the investment in the Naples building was worth, the operations of the Naples building, the financial performance of the Naples building, the costs and expenses of the Naples building, and the vacancies of the Naples building. This knowledge was obtained by Green's role as a real estate owner and investor in the Naples, Florida area and as the owner and manager of Tamiami, LLC." (Doc. 149-11 at 2).

at *9 n.12 (S.D. Ill. Sept. 25, 2025) (emphasis added) (citing *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757–58 (7th Cir. 2004)). A party "should not be made to assume that each witness disclosed" under (a)(1) "could be an expert witness at trial." *Musser*, 356 F.3d at 757.

Defendants did not disclose Green as an expert witness, only as a fact witness. As a result, any expert testimony that Defendants seek to elicit out of Green at trial is barred. *See id.* at 757–58. The relevant question then is whether testimony concerning the value of the Naples Property is an expert opinion, one that is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012). The testimony may instead be a lay opinion, admissible to help "the court [] understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2022) (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)).

The Federal Rules of Evidence "have been interpreted to permit a property owner to testify about the value of his property" "as a matter within his personal knowledge," so long as he does not "merely repeat another person's valuation." *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) (collecting cases). Given that Green is the owner of the Naples Property, he is permitted to testify as a layperson as to what he believes its value is. Green, however, cannot testify as an expert, such as an expert on property values generally, because he was not disclosed as an expert. *See id.* The Court

the facts and opinions contained within McHale's reports—no new opinions would be admissible.

Defendants later designated Roy Moloney as an expert, indicating they "expect that Moloney will testify regarding the facts and opinions discussed in McHale's reports." (Doc. 150-1 at 2). Plaintiff deposed Moloney about a month before trial. During that deposition, Moloney testified that he was not prepared to discuss any of McHale's reports concerning rent damages to GCI (if any) incurred by not occupying the additional 583 square feet. At that time, Moloney had not reviewed Paragraph 29-A of McHale's Addendum Report.

Plaintiff asks this Court to bar Moloney from testifying as to the additional square footage and Paragraph 29-A in McHale's reports. Plaintiff claims he is prejudiced by not being provided an opportunity to develop testimony or test theories and bases to this subject matter due to Moloney's unpreparedness at his deposition. But notably, Plaintiff did not move to continue the trial or move for leave to depose Moloney again at a future date. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii). Defendants did move to continue for other reasons, and that motion was granted. (Text Order 7/11/2025). The trial originally scheduled July 28, 2025, was moved to November.

Plaintiff cites no authority for his argument that the Court should prevent Moloney from testifying at trial as to these matters simply because Moloney was unprepared at his deposition to discuss them. *But see Gicla v. United States*, 572 F.3d 407, 410–13 (7th Cir. 2009) (finding no prejudice where expert's "eleventh-hour review" of

evidence did not alter his already-disclosed opinions and other party was given recess at a bench trial to confer and then cross examine); *DR Distribs., LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2016 U.S. Dist. LEXIS 99930, at *11-14 (N.D. Ill. Aug. 1, 2016) (reasoning that an opportunity to cross examine at trial or at another deposition cures any prejudicial effect resulting from expert not reviewing materials). It should also be noted, of course, that Plaintiff has McHale's reports and Moloney would testify only to their contents. For these reasons, the Court will not bar Moloney from testifying at trial as to the additional square footage and Paragraph 29-A.

Plaintiff's final request concerns the agreement that no new opinions would be given by Moloney. At his deposition, Moloney agreed that he would confine himself to the boundaries of McHale's reports, but Plaintiff contends Moloney sought to offer new opinions when he stated, "the damages you should receive should be the business value of the transaction,"[6] and "the correct approach would have been to calculate cash flows ... rather than profits and losses." (Doc. 150 at 7-8). Concerning the latter, Moloney stated that "it's not in [McHale's reports] specifically, but it's certainly suggested in there." (*Id.* at 9) (cleaned up).

Because of McHale's absence, Moloney is essentially being used as a vehicle for transmuting McHale's written opinions into oral testimony. While Moloney cannot venture away from the reports, Moloney can elaborate upon them—just as McHale

---

[6] This answer was in response to, "[H]is measures of damages in this scenario would be the percentage of profits that he should have otherwise realized. Correct?" (Doc. 150 at 7-8).

would have had he been available for trial.[7] To the extent then that the "cash flows" opinion, for example, is suggested by McHale's reports, it's admissible—it would be McHale's opinion, not Moloney's. Moloney's testimony that the opinion is suggested, however, is somewhat belied by the reports:

> *Courey's "Exhibit E" in his report attempts to calculate the cash flows generated by the building through 2043. If the intent was to calculate cash flows,* Courey needed to include in his calculation the $1,425,000 in downpayment and any closing costs involved in the acquisition as well as amounts required to handle deferred maintenance on the facility. *A more fully comprehensive presentation* would analyze the Internal Rate of Return based on the cash required to purchase and operate the property. . . . Courey's "Exhibit E" also omitted to include a reduction in principal payment for the alleged loan. [And] omitted to include the expenses incurred for the build out improvements of the building. These (down payment, principal reduction and building improvements) are cash flow transactions that are imperative when *performing a cash flows calculation like Courey's "Exhibit E."* For these reasons, "Exhibit E" is completely flawed and incorrect.

(Doc. 150-3 at 11-12) (emphasis added) (Paragraphs 29 and 29-A of Addendum). It appears from these passages that Courey (Plaintiff's expert) was attempting to use a cash-flows calculation and apparently did so incorrectly. It is not suggested, though, that calculating cash flows is the *best* approach as opposed to any other. Yet it does seem suggested by the passages that McHale believed Courey's "damages analysis [to be] flawed because he was calculating profits [and losses]" when *attempting* to calculate cash flows, rather than utilizing the proper analyses and resulting data described by McHale. (*Id.* at 36). Moloney explained that McHale does render that opinion in Paragraphs 29 and 29-A, as that is "essentially what he's saying" by suggesting "a more fully comprehensive

---

[7] Moloney, of course, cannot say whether he agrees or disagrees with any opinion contained within McHale's reports, as that itself would be a new opinion.

presentation [that] would have analyzed the internal rate of return based on cash required to purchase the property." (*Id.*).

This obviously unusual situation and substantial difficulty placed on Moloney demands some leeway. Moloney understands that he is not to offer any new opinions. As said, Moloney is permitted to expound upon what McHale wrote. That McHale understood Courey to have really used a calculation hinging on profits and losses, making Courey's attempt at a cash-flows calculation flawed, is an admissible opinion made by McHale and translated by Moloney. The opinion that a cash-flows calculation is better or more appropriate than a profit and loss calculation was not suggested by McHale and is thus barred.

### III. CONCLUSION

Based on the foregoing reasons, Plaintiff's First Motion *in Limine* (Doc. 149) is DENIED. Plaintiff's Second Motion *in Limine* (Doc. 150) is DENIED in part and GRANTED in part.

ENTER: November 7, 2025

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE